Yaffe v. Pickett.

4-5238                                          121 S. W. 2d 93

Opinion delivered November 14, 1938.

1140

*Roy Gean*, for appellant.

*Bert B. Larey,* for appellee.

HUMPHREYS, J.   This suit was brought in the circuit court of Miller county by appellee, Dr. R. W. Pickett, against Simon Yaffe, William Yaffe and Aileen Yaffe (Barron) to recover $2,750 for surgical and medical treatment to the patient, Aileen Yaffe (Barron), who was injured when the automobile in which she was riding on highway 71 near Ashdown collided with some part of a highway bridge resulting in a fracture of her right femur and pelvis and lacerations on the body and face.

It was alleged that William Yaffe, Simon Yaffe and Aileen Yaffe orally employed appellee as their doctor and surgeon to treat the patient, and that he treated her from May 9, 1937, to September 23, 1937, while she was in the Michael Meagher Hospital at Texarkana, seeing her daily and frequently at night, using his best skill and ability as a physician and surgeon he treated her, and that for the services rendered he was entitled to a judgment against them for $2,750 under the contract of employment.

Separate answers were filed to the complaint for each defendant.

The answer of Simon Yaffe denied each and every material allegation in the complaint, and as an additional defense pleaded sub-section 2 of § 6059 of Pope's Digest, which requires that any agreement or promise to answer for the debt, default or miscarriage of another shall be in writing.

The cause was submitted to a jury upon the pleadings, evidence adduced and instructions of the court, which resulted in a verdict and judgment against all of the defendants for $2,750, from which verdict and judgment Simon Yaffe has duly prosecuted an appeal to this court.

At the conclusion of the testimony Simon Yaffe requested the trial court to instruct a verdict for him which was refused over his objection and exception.

Appellant contends that the court erred in refusing this instruction because the alleged contract as far as he is concerned was void under the statute of frauds which he pleaded as a defense.

Appellee testified that immediately after the accident William Yaffe called him over the telephone and employed him to treat Aileen Yaffe (Barron). The testimony is undisputed that Simon Yaffe is the father of William Yaffe by a former wife, and that he married his present wife, Elizabeth, about seven years before Aileen was injured. And that she was not living with him as a member of his household when the injury occurred. The evidence showed Simon Yaffe lived in Fort Smith with his wife who was the mother of Aileen Yaffe by a former marriage. At the time of the injury Aileen was working for William Yaffe, who is an adult and in business for himself at Texarkana, Arkansas, and Clarksville, Texas. At the time of the injury Aileen was over eighteen years of age and no legal obligation rested upon Simon Yaffe to support Aileen or to provide medical services for her.

At the time of the accident she and others were in William Yaffe's automobile, which was being driven by him. William Yaffe sent her to the hospital in an ambulance. About two months and a half thereafter Simon Yaffe stopped at the hospital to see his wife and Aileen. Mr. Apple, his bookkeeper, was with him. They were enroute to Shreveport. They went out to the hospital and had an interview with appellee. They both testified, and so did Mrs. Elizabeth Yaffe, that no agreement was made between the doctor and Simon Yaffe relative to payment for his services for attendance upon Aileen.

Appellee admits that that was the only interview he had with Simon Yaffe and testifies to what was done and said on that occasion as follows:

"Direct Examination

"Q. Who called you to the hospital to take charge of the case? A. William Yaffe. Q. Did he tell you to treat her? A. Yes. Q. He told you to treat her and you started treating her, did you? A. Yes. Q. What conversation did you have with Simon Yaffe when he asked you to continue the treatment of her, if any? A. He and his wife, the girl's mother, came sometime after she had been in the hospital and talked to me about the finances of the case. Of course, it was obvious at that time that the nurses' and doctor's bills and the hospital bills were going to amount to something, and they told me to try to get William Yaffe to pay as much of the bill as he could. Q. Who told you that? A. Simon Yaffe, but that he and Mrs. Yaffe would be responsible for the bill and I would be paid. Q. Did he ask you to continue your services at that time? A. Yes. Q. And you did that at his request? A. Yes."

"Cross-Examination

"Q. Doctor, when was it you say you talked to Simon Yaffe, this gentlemen right here? A. I don't remember the date. Q. And where were you? A. In the front office of the Michael-Meagher Hospital. Q. Who was present at that time? A. Sister Francis. Q. Was Mrs. Yaffe there? A. Yes. Q. Did you see another gentleman there with Mr. Yaffe by the name of Apple— he made a remark that he had seen you somewhere before —do you recall that instance? A. No, I don't clearly. Q. Now, did I understand you to say that Simon Yaffe told you that if Bill Yaffe didn't take care of the bill, he would? A. Yes. Q. That is your testimony on this question, is it? A. Yes."

We think, according to the testimony of appellee, detailed above, the undertaking on the part of Simon Yaffe was a collateral and not an original one. It was an undertaking on his part to pay the debt of another if the original debtor failed to pay same. Appellee on cross-examination stated positively that Simon Yaffe told him that if Bill Yaffe didn't take care of the bill he

would and when asked if that was the purport of his conversation with Simon Yaffe he unequivocally answered "yes."

The undertaking was within the statute of frauds and void.

On account of the error indicated, the judgment is reversed as to Simon Yaffe, and the cause is dismissed as to him.